**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

PERKINELMER HEALTH SCIENCES, INC.,

        PerkinElmer,

    v.

AGILENT TECHNOLOGIES, INC.,

        Defendant.

Civil Action No. 12-cv-10562-NMG

**AGILENT TECHNOLOGIES, INC.'S  DISCLOSURE OF
INVALIDITY AND NON-INFRINGEMENT CONTENTIONS**

Pursuant to the Court's Scheduling Order for Patent Infringement Cases (D.I. 26)

Defendant, Agilent Technologies, Inc. ("Agilent"), hereby submits its preliminary invalidity and

non-infringement contentions to Plaintiff PerkinElmer Health Sciences, Inc. ("PerkinElmer")

with respect to the claims asserted in PerkinElmer's Initial Infringement Disclosures served on

October 15, 2012.[1]  (D.I. 45.)

PerkinElmer asserts patent claims that are anticipated by or obvious over the claims

presented in a now-expired parent patent.  PerkinElmer enjoyed the full patent term of that

expired patent, and now attempts to unfairly extend its monopoly by preventing Agilent and

others from practicing methods and making compositions in the public domain.  Not only were

electrospray ionization methods well known in the art so that reciting the ionization steps adds

nothing patentable to the asserted claims, but the use of electrospray ionization to make multiply

charged ions was also known in the art.  The additional recitation in some of the asserted claims

---

[1]      "Asserted claims" shall mean: claims 1, 3, 5, 6, 8-11, 16, 18-24, 26-29, 31, 33, 35, 43, 45-52, 57, 59-63, 68, 70, 72-74, 76-78, 101, and 103-112 of U.S. Patent No. 7,686,726, and claims 10, 14, 31-37, 42, 44-68 of U.S. Patent No. 5,581,080.  (*See* D.I. 45-1, 45-2.)

of known methods of analyzing the data generated by mass spectrometry also does not render patentable methods and compositions known in the prior art.  Agilent further contends that the asserted claims are invalid for not being enabled for the full scope of the invention claimed.

Moreover, PerkinElmer has failed to provide any evidence of direct infringement either by Agilent or by Agilent's customers, especially if the asserted claims are construed, as stated by the patentee during prosecution, to exclude compositions containing singly or doubly charged ions, or methods using such compositions.  Similarly, PerkinElmer has failed to provide evidence that Agilent had the specific intend to induce infringement of the asserted claims.

## I.        General Reservations

Agilent's discovery and investigation efforts in connection with this lawsuit are at the beginning stages, and, thus, these disclosures are based on information reasonably available to date.  Agilent reserves the right to amend and/or supplement these contentions as necessary and appropriate, and according to the Court's Scheduling Order.  (D.I. 26.)

Because claim construction has not yet begun, Agilent bases these preliminary invalidity and non-infringement contentions on its own reasonable interpretation of the claims in light of, e.g., a plain reading of the claims, PerkinElmer's apparent constructions of the asserted claims of U.S. Patent Nos. 5,581,080 ("the '080 patent") and 5,686,726 ("the '726 patent") (collectively, the "asserted patents" or "patents-in-suit"), and the prosecution histories of the asserted patents. Nothing herein or in the attached exhibits should be construed as binding on Agilent.  Nothing herein or in the attached exhibits should be construed as an admission that Agilent agrees with PerkinElmer's apparent or implied claim constructions.  Similarly, nothing herein shall be construed as an admission regarding the application of the asserted claims to Agilent's mass spectrometers.  And nothing stated herein should be construed as a waiver of any argument

available under 35 U.S.C. §§ 101, 102, 103, or 112, including invalidity for lack of enablement, lack of written description, and/or for indefiniteness.

Further, prior art not discussed herein may later become relevant depending on the claim constructions PerkinElmer asserts, the claim constructions the Court adopts, PerkinElmer's development of its infringement contentions, or developments and positions taken in connection with related proceedings at the United States Patent and Trademark Office ("USPTO"). Agilent also reserves the right to amend and/or supplement these contentions accordingly.

Agilent bases the invalidity contentions in part upon the May 19, 1989, priority date indicated on the faces of the patents-in-suit (the filing date of U.S. Application No. 07/354,393, now abandoned). Agilent does not admit or concede that any of the asserted claims are entitled to that priority date and reserves the right to contest it. If the Court finds that PerkinElmer is not entitled to the May 19, 1989, priority date, or if PerkinElmer attempts to assert an alternate priority date, Agilent reserves the right to amend, supplement, or modify these contentions.

## II.      Invalidity Contentions

### A.      Prior Art

Agilent asserts that the prior art references listed below, individually or in combination, render the asserted claims of the patents-in-suit invalid under the judicially created doctrine of obviousness-type double patenting, and/or as anticipated, and/or as obvious. Pursuant to the Court's Scheduling Order (D.I. 26), Agilent has attached charts that identify at least one location within the prior art where each relevant claim element is disclosed. Agilent has attached copies of references 1-4 identified below. To the extent Agilent later amends or supplements these contentions, Agilent will supplement its production of prior art accordingly.

In addition to the specific combinations of the listed prior art advanced below, Agilent reserves the right to rely on any other combination of prior art references disclosed herein.

Moreover, Agilent reserves the right to rely on uncited portions of the identified prior art, other references, and/or expert testimony to further support its positions, including providing context to or aid in understanding:  the prior art, the state of the art at the time of the alleged invention, and motivation to make the claimed invention.  Agilent further reserves the right to show that any claim element is inherent in an item of prior art.

|  | Patent/Publication Number | Filing Date/Publication Date |
|---|---|---|
| 1 | U.S. Patent No. 5,130,538 to Fenn, et al. | Filed Oct. 10, 1991 Issued Jul. 14, 1992 |
| 2 | U.S. Patent No. 4,531,056 to Labowsky, et al. | Filed April 20, 1983 Issued July 23, 1985 |
| 3 | Wong, S.F., et al., *Multiple Charging in Electrospray Ionization of Poly(ethylene glycols)*, 92 J. Phys. Chem. 546-50 (1988) | Published January 28,1988 (Received May 18, 1987) |
| 4 | Baumann, H., et al., *PIG Ion Source with End Extraction for Multiply Charged Ions*, 122 Nuclear Instr. & Meth. 517-25 (1974) | Published 1974 |

### B.    The Claims of the '726 Patent and '080 Patent are Invalid for Obviousness-Type Double Patenting

Subject to the reservations above, Agilent contends that the asserted claims of the '726 and '080 patents are invalid under the judicially created doctrine of obviousness-type double patenting over the now-expired claims in the U.S. Patent No. 5,130,538 ("the '538 patent") to Fenn et al., either alone or in view of U.S. Patent No. 4,531,056 to Labowsky et al. ("the '056 patent").

Obviousness-type double patenting is a judicially created doctrine that "prohibit[s] a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent."  *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001).  "A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim."  *Id.* at 968; *see also Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373,

1385-86 (Fed. Cir. 2003) (finding claims to methods using a composition and claims to the composition not to be "patentably distinct").

The '538 patent is the "parent" of the '726 patent and the "grandparent" of the '080 patent and is now expired.  The specifications of the three patents are essentially identical; all three patents claim the benefit of the same May 1989 filing date; and all three patents name the same inventors.  Exhibits A-B, attached, set forth in detail where each element of the asserted claims was previously claimed in the '538 patent.  The asserted claims of the '080 patent directed to methods for determining the mass of a molecule by mass spectrometry recite the same elements of the '538 patent method claims.  With regard to the composition claims of the '726 patent, those claims too are not patentably distinct from the '538 method claims.  Because the public cannot practice the method previously claimed by the '538 patent without making the compositions claimed in the '726 patent, the composition claims of the '726 patent too are not patentably distinct from the '538 method claims.  *See Geneva Pharms.*, 349 F.3d at 1385-86.  The asserted claims are therefore invalid for obviousness-type double patenting over the '538 patent.

Agilent further contends that the recitation by certain claims of "calculations" or "determinations" of the molecular weight of the parent species using the m/z values do not render the otherwise invalid claims patentable.  *See* claims 43, 45-52, 57, 59-68 of the '726 patent; claims 10, 14, 31-37, 42, 44-49, 55-58, 61-68 of the '080 patent.  These mathematical calculation-type elements are obvious because one skilled in the art at the time of the invention would have understood how to interpret the m/z value to calculate the molecular weight.  They are also unpatentable under 35 U.S.C. § 101.  *See, e.g.*, *Parker v. Flook*, 47 U.S. 548, 98 S.Ct. 2522 (1978).

**C.    The Claims of the '726 Patent Are Anticipated or Obvious under 35 U.S.C.
§§ 102 and 103**

Subject to the reservations above, Agilent additionally contends that the prior art

references listed above either anticipate or render obvious the asserted claims.  One or more

combinations of the prior art references would render the claims obvious because one skilled in

the art would have been combined these references using:  known methods to yield predictable

results; a substitution of one known, equivalent element for another (e.g., substituting

electrospray ionization for prior art ionization techniques such as electrohydrodynamic

ionization) to obtain predictable results; and/or a teaching, suggestion, or motivation in the prior

art generally.  *See KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1739-40, 1742 (2007).

### 1.  Wong Alone or in View of the '056 Patent

Agilent contends that Wong, S.F., et al., *Multiple Charging in Electrospray Ionization of

Poly(ethylene glycols)*, 92 J. Phys. Chem. 546-50 (1988) ("Wong") anticipates certain of the

asserted claims of the '726 patent under 35 U.S.C. § 102 and renders the remaining claims

obvious under 35 U.S.C. § 103, either alone or in view of the '056 patent.  *See* Exhibit C,

attached.

Wong teaches "Multiple Charging in Electrospray Ionization of Poly(ethylene glycols)"

(title).  Wong teaches generating a composition comprising a population of multiply charged

polyatomic ions from polyethylene glycol molecules.  *See id.* at Figs. 7-9.  Wong teaches that the

number of charges on each ion defines the ion's charge state number.  *Id.*  And Wong also shows

populations of polyethylene glycol ions comprising a plurality of subpopulations, where the ions

in each subpopulation have the same charge state number and the populations of ions comprise

subpopulations with a minimum of three and a maximum of not less than five charges.  *Id.*

Additionally, Wong discloses that the ions generated may have "up to at least twenty-three"

charges, which reads upon the charge state number ranges recited in the asserted claims. *Id.* at 548, Abstract, Figure 6 and 11. Wong discloses the relationship between various ion subgroups. *See id.* at Figure 11. Wong also teaches that future experiments will use "relatively pure species of known molecular weight" ***instead*** of polyethylene glycols, anticipating or at least rendering obvious those claims that exclude PEG or that specify the molecules to be analyzed have substantially the same molecular weight or formula or are otherwise indistinguishable. *Id.* at 550. Additionally, Wong teaches electrospray ionization ("ESI"), which anticipates or at least renders obvious those claims that include the ESI steps of "dispersing a solution" and "evaporating" the solvent into droplets.[2] *See id.* at 546.

The '726 patent claims that are limited to compositions formed from "biopolymers" or "proteins, peptides, polypeptides, carbohydrates, oligonucleotides, and glycoproteins," or "species with molecular weights not less than 5000" of the asserted claims (collectively, "biomolecule-type elements") are obvious over Wong in view of the disclosure in the '056 patent that electrospray ionization is useful for analyzing high molecular weight compounds like biomolecules. The '056 patent teaches "the electrospray technique produces ions from solutes of very high molecular weights (e.g. 500,000)" and that "[i]t is therefore well suited for the ionisation of thermally unstable molecules, such as those frequently encountered in biochemistry." *See* '056 Patent at 3:7-14. One skilled in the art at the time of the invention

---

[2]     In addition to reciting the "dispersing" and "evaporating" steps to form the claimed composition, claims 68, 70, and 72-73 of the '726 patent further include the step of "mass analysis being carried out on a portion of said multiply charged polyatomic ions in said bath gas that is introduced into a vacuum system containing a mass analyzer." This mass analysis step renders the claims indefinite under 35 U.S.C. § 112, ¶ 2 because the claim recites different classes of inventions, and, therefore, does not reasonably apprise those skilled in the art of when infringement occurs. *See IPXL Holdings*, *L.L.C. v. Amazon.com*, *Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005).

would have understood the phrase, "thermally unstable molecules, such as those frequently encountered in biochemistry" to comprise biopolymers, proteins, peptides, polypeptides, carbohydrates, oligonucleotides, and glycoproteins, and other species with molecular weights not less than 5000. Therefore Wong, in view of the '056 patent, renders the asserted claims that include the "biomolecule"-type elements obvious.

### 2. Baumann Alone or in View of the '056 Patent

Agilent contends that Baumann, H., et al., *PIG Ion Source with End Extraction for Multiply Charged Ions*, 122 Nuclear Inst. & Methods 517-25 (1974) ("Baumann") anticipates certain of the asserted claims under 35 U.S.C. § 102(b) and renders the remaining claims obvious under 35 U.S.C. § 103(a), either alone or in view of the '056 patent. *See* Exhibit D, attached.

Baumann discloses the use of a PIG ion source to generate populations of ions for mass spectrometry. Baumann, Figs. 1-2. The populations of ions are generated from distinct polyatomic molecules, e.g., $UF_6$, as well as from noble gases. *Id*., Tables 1-2. Because single molecular species are analyzed, the parent molecular species have substantially the same molecular weight and are chemically identical per the asserted claims of the '726 patent. Each population of ions contains subpopulations of multiply charged ions, and the ions in each subpopulation have the same charge state number. *Id*., Figs. 8-13. Baumann teaches that a mass analyzer (Fig. 2) measures the mass-to-charge (m/z) ratios of the ions to produce a set of m/z values, thereby enabling the user to determine the molecular weight of the polyatomic parent species. Further, because none of the parent molecular species analyzed by Baumann is a synthetic polymer such as poly(ethylene glycol), Baumann anticipates the claims that exclude the use of PEG. Additionally, if the Court construes the phrases, "comprising . . . charge state numbers . . . with a smallest value not less than three" and similar phrases regarding multiply charged ions to be open-ended and to permit the presence of singly and doubly charged ions,

Baumann discloses a range of ions with one to thirty charges, reading upon those claim limitations. *Id.*, Section 3.3.

With regard to the "biomolecule"-type claims, as set forth above (*see* Section II(C)(1) *supra* regarding the Wong reference), the '056 patent teaches the use of ESI to make "compositions formed from proteins, peptides, polypeptides, carbohydrates, oligonucleotides, and glycoproteins" and "compositions formed from species with molecular weights not less than 5000." Additionally, the '056 patent discloses the electrospray ionization technique generally and, therefore, renders obvious the claim elements describing the "dispersing" and "evaporating" steps of that technique. The Baumann reference in view of the teachings of the '056 patent renders the asserted claims reciting "biomolecule" and/or "electrospray" elements obvious.

### D. The Asserted Claims of the '726 Patent and '080 Patent Are Not Enabled Under § 112, ¶ 1

Subject to the reservations above, Agilent contends that certain asserted claims are invalid because they fail to meet the "enablement" requirement of 35 U.S.C. § 112, ¶ 1. Enablement requires that the specification teach those skilled in the art to make and use the full scope of the invention without undue experimentation. *See In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). Where claim terms include a numerical range with a lower threshold, but not an upper limit, and where the specification discloses information that indicates that only a small subset of the claimed range is enabled, the claim as a whole is not enabled. *See Magsil Corp. v. Hitachi Global Storage Techs.*, 687 F.3d 1377, 1381-82 (Fed. Cir. 2012).

None of the asserted claims recite an upper limit for the molecular weight of the "distinct polyatomic parent molecular species." Claims 8, 23, 29, 50, 73, and 78 of the '726 patent and claim 50 and dependent claims 51-54 of the '080 patent recite a "range" for the molecular weight with a lower limit of "not less than about 5000," but no upper limit. The remaining claims recite

neither a lower nor an upper limit for the range of molecular weights encompassed.  The

molecular weights of the claimed compositions, therefore, impermissibly extend indefinitely.

The patent specifications provide no data or evidence that molecules with molecular weights

larger than 130,000 Da can be analyzed with the claimed methods and or that the claimed

compositions can be formed from such molecules.  *See, e.g.*, '080 patent and '726 patent at

column 4, lines 29-36.  Based on the limited disclosure in the specification, one skilled in the art

at the time of the invention would not have been able to apply the methods claimed in the '080

patent or generate the compositions claimed in the '726 patent using proteins and other large

molecules with molecular weights of greater than 1 MDa, for example, without undue

experimentation.  *See, e.g.*, Smith, R.D., et al., *Trapping, Detection and Reaction of Very Large*

*Single Molecular Ions by Mass Spectrometry* 369 Nature 137-39 (1994) (indicating that in 1994

a technique was developed with sufficient sensitivity to detect individual molecules for larger

molecules and that prior methods could only analyze those "of relative molecular masses

approaching 200,000 [Da]").  Accordingly, the above claims are invalid because the mass

spectrometry of large molecular weight polyatomic species, which is encompassed by the claims,

is not enabled.

## III.    Non-Infringement

### A.    PerkinElmer Has Failed to Show Any Specific Acts of Direct Infringement by Agilent After the License Expired

PerkinElmer contends that Agilent infringes the patents-in-suit directly through its own

use of the patented technology.  D.I. 45 at 1.  In its infringement contentions, PerkinElmer relies

on select portions of an Agilent 6100 Series Quadrupole LC/MS Systems Concept Guide

"Revision A" dated September 2011 (reference 1), an Agilent 6200 Series TOF and 6500 Series

Q-TOF LC/MS System from November 2009 (reference 2), a Technical Overview entitled

"Making your LC Method Compatible with Mass Spectrometry" printed April 28, 2011 (reference 3), an Agilent 6300 Ion Trap LC/MS Systems Concepts Guide Third Edition dated May 2006 (reference 4), a "Familiarization Guide" for the Agilent MassHunter BioConfirm Software "Revision A" dated September 2011 (reference 5), and a Presentation entitled "ASMS 2006- Agilent Chip Technology Workshop, dated May 2006 (reference 6).  In particular, PerkinElmer relies on examples of ESI spectra of myoglobin in references 3, 5, and 6 as showing that Agilent has performed the methods claimed in the '080 patent to make the compositions claimed in the '726 patent.  *See, e.g.*, D.I. 45-1 and 45-2 (Exhibits 1 and 2) (citing, e.g., reference 3 at pages 9-10 and Figure 14; reference 5 at pages 3-12; and reference 6 at page 32).

These spectra, however, are not evidence that Agilent has infringed the claims of the patents-in-suit.  As PerkinElmer admits, Agilent licensed the '538 patent "and any and all subsequently-issued U.S. patents issuing from any continuation, divisional, continuation-in-part, reissue reexamination or extension applications thereof," including the patents-in-suit, from 1997 until June 30, 2011.  *See* Complaint, D.I. 1 at ¶¶ 10-12.  All of the references with the exception of references 1 and 5 are dated before June 2011.  And earlier versions of references 1 and 5 dated *before* June 2011 are publicly available and disclose the same information PerkinElmer relies on in its infringement contentions.[3]  Because the spectra cited in PerkinElmer's infringement contentions were generated while Agilent was licensed under the patents-in-suit,

---

[3] *See, e.g.*, Agilent 6100 Series Quadrupole LC/MS Systems Concept Guide, Third Edition dated April 2010, *available at* http://www.chem.agilent.com/Library/usermanuals/Public/G1960-90072_Quad_Concepts.pdf; Agilent MassHunter BioConfirm Software Familiarization Guide, Second Edition dated March 2009, *available at* http://www.chem.agilent.com/Library/usermanuals/Public/g6829- 90004_bioconfirm_familiarization.pdf; Agilent MassHunter BioConfirm Software Familiarization Guide, Revision A dated February 2011, *available at* http://www.chem.agilent.com/Library/usermanuals/Public/g6829-90007_bioconfirm_familiarization.pdf.

the use was permissible and, therefore, cannot support PerkinElmer's contention that Agilent has infringed the asserted claims.

**B.    PerkinElmer Has Failed to Show That Agilent's Mass Spectrometers Do Not Produce Compositions Containing Singly and Doubly Charged Ions**

Determining whether a patent claim is infringed is a two-step process that includes:  (1) an interpretation of disputed claim terms in the context of the plain meaning, the specification, and the prosecution history; and (2) a comparison of the accused product to the claims as construed.  *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005) (en banc).

All of the claims of the '080 patent recite that the methods make compositions comprising ions with at least three charges.  Likewise, all of the claims of the '726 patent recite compositions comprising ions with at least three charges.  The prosecution histories of the patents-in-suit indicate that the claims do not cover methods for making composition comprising singly or doubly charged ions or compositions containing such ions.  During the prosecution of the '726 and '080 patents, the patentees argued repeatedly that the claims cover ***only*** multiply charged ions of three or more charges in order to overcome rejections over the prior art:

- "Thus, the present invention teaches a method for creation of populations of ions whose subpopulations of ions of lowest charge are themselves at a high charge state (e.g. at a minimum of three charges, or five charges or higher).  <u>In the present invention, no subpopulations are present with a charge state number of 1 or 2.</u>"  '080 Prosecution History, Dec. 6, 1995 Amendment at 19 (emphasis added) (distinguishing the claims over the prior art to overcome a § 102(b) rejection).

- "Another unique feature of the ion populations claimed in the invention is that <u>the minimum number of charges found on any ion is always 3 or more.</u>"  '726 Prosecution History, Nov. 2, 1993 Amendment at 3 (emphasis added).

- "The new composition of matter, as claimed, comprises sub-populations of multiply charged ions in which <u>the minimum number of charges on each ion is greater than or equal to three</u> and the maximum number of charges is greater than or equal to five. . . . Populations of ions with these characteristics have not been described or even suggested by the prior art."  *Id.* (emphasis added).

- "In previous work the populations of ions that had been produced mostly comprised ions with from one to two or three charges. . . In those populations, singly charged ions were always present.  By comparison, <u>the populations of ions which are produced in the subject invention as claimed, contain ions with a minimum of three or more charges but contain no singly or doubly charged ions</u>."  *Id.* at 5 (emphasis added).

Because the patentees asserted that "multiply charged" should be construed to exclude populations of ions comprising singly and doubly charged ions, PerkinElmer cannot argue now that the claims are infringed by methods that make and compositions that comprise populations of ions with singly and doubly charged ions.

In order to support its contention that the use of Agilent's mass spectrometers infringes the asserted claims, PerkinElmer, therefore, must show that such use makes compositions that contain only ions with at least three charges.  PerkinElmer has failed to do so.  PerkinElmer relies heavily on the disclosure of the myoglobin example of reference 3 at Figure 14b in its infringement contentions.  Figure 14b, however, does not show the absence of singly or doubly charged ions in the myoglobin mass spectrum.  The high mass portion of the m/z ratio axis in figure 14b only extends to 1200.  Singly or doubly charged myoglobin ions are not observable in this m/z range.  Figure 14b therefore cannot be relied on to prove that no singly or doubly charged ions are present.  Because PerkinElmer has not shown that the use of Agilent's mass spectrometers produces compositions that meet the at least three charges limitation, which is present in all of the claims in both patents-in-suit, PerkinElmer has not met its burden of proof with respect to direct infringement by Agilent.

## C.     PerkinElmer Has Not Shown Induced Infringement

PerkinElmer also contends Agilent "has induced and is inducing infringement" of the patents-in-suit.  *See* D.I. 45 at 1.  In order to support its allegation, PerkinElmer must show that that there has been direct infringement by customers, and also that Agilent knowingly induced

the underlying infringing acts with a specific intent to encourage its customers to infringe the patents.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328-29 (Fed. Cir. 2009).

PerkinElmer has shown neither that Agilent's customers directly infringed the asserted claims nor that Agilent had the requisite specific intent to induce infringement.  First, PerkinElmer does not point to any use of Agilent's mass spectrometers, allegedly infringing or not, by third parties.  Second, PerkinElmer cites no evidence to show that Agilent had a specific intent to induce its customers to infringe the patents-in-suit.

With regard to the intent prong, because, as described in the references PerkinElmer cites, the Agilent products have substantial non-infringing uses, PerkinElmer must show direct evidence of intent and cannot rely on a mere inference of intent.  *See Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003).  As the references make clear, Agilent's ESI systems can be used to analyze small molecules and are not limited to analyzing proteins.  *See* reference 1 at page 26 (indicating the system can analyze "smaller molecules like drugs and environmental contaminants"); reference 2 at page 20 (same); reference 3 at page 9 (indicating ESI can be used with low molecular weight compounds).  When used for these purposes, Agilent's ESI mass spectrometers produce compositions comprising singly or doubly charged ions that are not encompassed by the claims of the patents-in-suit.  *See, e.g.*, reference 3 at Figure 14a (showing singly charged ions in ESI).  And, none of the references instructs that the ionization of proteins or other biomolecules should produce compositions that do not contain singly and doubly charged molecules.

Additionally, Agilent's systems can use a number of interchangeable atmospheric pressure ionization ("API") sources, and are not limited to ESI.  *See* reference 1 at page 22 (also

listing atmospheric pressure chemical ionization ("APCI"), atmospheric pressure photoionization ("APPI"), and multimode ionization as possible API sources for the Agilent 6100 Series Quadrupole LC/MS systems); reference 2 at 16-26 (listing ESI only as one of five API sources with respect to the Agilent 6200 Series TOF and 6500 Series Q-TOF LC/MS System); reference 4 at 11-20 (describing the same with regard to the Agilent 6300 Ion Trap LC/MS System). APCI, for example, "rarely results in multiple charging, so it is typically used for molecules less than 1,500μ."  Reference 1 at 29; reference 2 at 22.  APPI is similarly used to analyze these smaller compounds.  *See* reference 1 at 30; reference 2 at 223.  Because APCI and APPI would yield singly or doubly charged ions, the use of Agilent's mass spectrometers with these ionization techniques would not infringe the asserted claims.  Indeed, the excerpts PerkinElmer relies on to allege infringement are merely isolated examples of possible uses of the Agilent systems, where the references as a whole describe a much broader set of possible non-infringing uses.

That the Agilent references disclose means to use the accused devices without practicing the claimed invention shows a lack of specific intent to induce infringement.  *See Vita-Mix*, 581 F.3d at 1329 (holding there was no evidence Basic intended users to infringe, in part because of the substantial non-infringing uses of Basic's device).  Additionally, as exemplified by Agilent's petition for reexamination of the patents-in-suit pending before the USPTO and as set forth above, Agilent has a good-faith belief that the asserted patents are invalid.  This also shows a lack of specific intent to induce infringement.  *See Bose Corp. v. SDI Techs. Imation Corp.*, No. 09-11439, 2012 WL 2862057, *10-11 (D. Mass.  July 10, 2012) (citing *Exergen Corp.*, 575 F.3d at 1320) ("[I]nvalid claims cannot give rise to liability for infringement.").  In light of the above,

PerkinElmer has not met its burden to identify support for its contention that Agilent induces infringement of the patents-in-suit.

Dated:  December 17, 2012                    Respectfully submitted,

                                             /s/ William L. Strauss
                                             William L. Strauss (*pro hac vice*)
                                             Thomas H. Jenkins (*pro hac vice*)
                                             FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER, LLP
                                             901 New York Avenue, NW
                                             Washington, DC 20001-4413
                                             E-mail address:  william.strauss@finnegan.com
                                             E-mail address:  tom.jenkins@finnegan.com
                                             Telephone:  (202) 408-4000
                                             Facsimile:  (202) 408-4400

                                             Denise W. DeFranco (BBO NO. 558859)
                                             FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER, LLP
                                             Two Seaport Lane
                                             Boston, MA 02210-2001
                                             E-mail address:  denise.defranco@finnegan.com
                                             Telephone:  (617) 646-1600
                                             Facsimile:  (617) 646-1666

                                             **Attorneys for Defendant
                                             Agilent Technologies, Inc**.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non registered participants on December 17,

2012.

/s/ William L. Strauss
William L. Strauss (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
E-mail address:  william.strauss@finnegan.com
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

**Attorney for Defendant**
**Agilent Technologies, Inc**.