```
                    United States District Court
                      District of Massachusetts
_____
                              )
PERKINELMER HEALTH SCIENCES,  )
INC.,                         )
        Plaintiff,            )
                              )    Civil Action No.
        v.                    )    12-10562-NMG
                              )
AGILENT TECHNOLOGIES, INC.,   )
        Defendant.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

PerkinElmer Health Sciences, Inc. ("PerkinElmer") alleges that Agilent Technologies, Inc. ("Agilent") is infringing two patents pertaining to the analysis of charged ions, for which PerkinElmer holds an exclusive license. Defendant has moved to dismiss the case while plaintiff seeks leave to file an amended complaint.

For the reasons that follow, defendant's motion to dismiss will be denied, and plaintiff's motion for leave to file an amended complaint will be allowed.[1]

---

[1] Agilent also moved on September 20, 2012, for a stay of these proceedings pending a reexamination by the United States Patent and Trademark Office ("the PTO") of the patentability of the uses of the patents at issue that PerkinElmer claims were infringed. The Court retains that motion under advisement, pending the filing of defendant's answer to the Amended Complaint.

-1-

**I.     Facts**

In May 1989, three researchers working at Yale University ("Yale") applied for a patent pertaining to the analysis of charged ions. The United States Patent and Trademark Office ("the PTO") issued United States Patent No. 5,130,538 ("the '538 Patent") to those three researchers in July, 1992. The PTO issued two related patents, United States Patent Nos. 5,686,726 ("the '726 Patent") and 5,581,080 ("the '080 Patent"), to the same researchers in December, 1996 and November, 1997 respectively. All three patents were subsequently assigned to Yale, which continues to hold them.

In March 1997, Yale granted an exclusive license of the '538 Patent and any subsequently issued, related patents ("the License Agreement") to Analytica of Branford, Inc. ("AoB") and its successors. Under that agreement, Yale retained the right to use the Patents for non-commercial purposes, to participate in infringement actions brought by AoB and to sue an alleged infringer if, after providing notice to AoB, AoB declined to sue. The License Agreement otherwise granted AoB an exclusive, world-wide license for the life of the patents. The specific rights included the "sole right" to use the Patents for commercial purposes, to sublicense the patents and to sue, defend or settle any infringement action, bearing all the expenses and retaining all recoveries resulting from those suits.

Also in March 1997, AoB granted a non-exclusive license to sell products based upon the Patents ("the Sublicense Agreement") to Hewlett-Packard Company ("HP").  HP, in turn, assigned its rights under the Sublicense Agreement to its subsidiary, defendant Agilent Technologies.  Agilent made royalty payments to AoB for the right to manufacture several devices that made use of that technology, including  mass spectrometers.

AoB merged with and into PerkinElmer in 2009.  As successor-by-merger, PerkinElmer became the licensee under the License Agreement and the licensor under the Sublicense Agreement.  On June 28, 2011, however, Agilent informed PerkinElmer that it would no longer make royalty payments under the Sublicense Agreement because the '726 and '080 Patents were allegedly invalid due to double-patenting.  Agilent subsequently declined to make royalty payments.

## II.  Procedural History

PerkinElmer filed a two-count complaint on March 28, 2012 alleging that Agilent willfully and materially breached the Sublicense Agreement when it failed to make royalty payments in June 2011 and continues to infringe the '726 and '080 Patents by manufacturing products that make use of those patents. PerkinElmer seeks a declaration that Agilent is infringing, damages and injunctive relief.

Agilent moved to dismiss the Complaint under Fed. R. Civ. P.

12(b)(1) on June 11, 2012, on the grounds that PerkinElmer lacks standing to sue Agilent because it does not own all substantial rights to the patent. The Court heard argument on Agilent's motion on August 14, 2012, at the same time it entered a scheduling order.

On October 2, 2012, PerkinElmer moved to amend the Complaint in order (1) to add a breach of contract claim and (2) to revise its factual allegations to reflect the fact that Agilent is a successor in interest to the license agreement at issue in the case, rather than an original party.

### III. **Motion to Dismiss**

Because federal courts are considered courts of limited jurisdiction, "federal jurisdiction is never presumed." Viquiera v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). Instead, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

Accordingly, a defendant may move to dismiss an action based on lack of federal subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) by challenging either the sufficiency of the jurisdictional facts alleged or by controverting the accuracy of the same. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). When considering a sufficiency challenge, the court applies the familiar Rule 12(b)(6) standard of review and

must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences from them in her favor. Sanchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 119 (1st Cir. 2012) (citing Hospital Bella Vista, 254 F.3d at 363). When defendant controverts the accuracy of the pleadings, the plaintiff's jurisdictional averments are entitled to no presumptive weight. Hospital Bella Vista, 254 F.3d at 363.

Agilent purports to controvert jurisdictional facts and the Court therefore declines to afford PerkinElmer's averments any presumptive weight.

### A.  Standing to Bring an Infringement Claim

Under the Patent Act, standing to litigate patent infringement actions is limited to "the patentee to whom the patent was issued" as well as "successors in title to the patentee." 35 U.S.C. §§ 281, 100(d). Bare licensees typically cannot sue for infringement without joining the patent owner (or "patentee"), who holds the title to the patent in trust for the licensee. Abbott Laboratories v. Diamedix Corp., 47 F.3d 1128, 1131 (Fed. Cir. 1995). The presence of the patent owner serves both to give the court jurisdiction and to enable the alleged infringer to respond in one action to all claims of infringement for his act. Id.

An exclusive licensee, however, is considered a successor in title with standing to sue for patent infringement if the patent

owner transferred "all substantial rights" to the patent under the license agreement. Id. at 1132-33; Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 874 (Fed. Cir. 1991).

To determine whether all substantial rights were transferred from the patentee to the licensee, courts review both what rights were granted and what rights were retained under the license agreement. Alfred E. Mann Found. For Scientific Research v. Cochlear Corp., 604 F.3d 1354, 1360-61 (Fed. Cir. 2010). Among the rights relevant to a court's analysis are

1) the right to make, use and sell products or services under the patent,
2) the scope of the licensee's right to sublicense,
3) the nature of license provisions regarding the reversion of rights to the licensor following breaches of the license agreement,
4) the right of the licensor to receive a portion of the recovery in infringement suits brought by the licensee,
5) the duration of the license rights granted to the licensee,
6) the ability of the licensor to supervise and control the licensee's activities,
7) the obligation of the licensor to continue paying patent maintenance fees,
8) the nature of any limits on the licensee's right to assign its interests in the patent, and
9) the nature and scope of the exclusive licensee's and the licensor's rights to bring suit against alleged infringers.

See id. at 1360-61 (listing factors). Of those factors, "the nature and scope of the licensor's retained right to sue accused infringers is the most important." Id. at 1361.

The decisions of the Federal Circuit in Vaupel and Abbott

also serve as guideposts for determining whether substantial rights were transferred. In Vaupel, the Federal Circuit held that an exclusive patent licensee had standing to sue for infringement of the licensed patent where it acquired rights from the patentee to bring lawsuits for infringement, the exclusive right to make, use, and sell items practicing the patent and total responsibility to incur costs arising from the pursuit of any infringement action. 944 F.2d at 874. Of the granted rights, the "dispositive" grant was the right to sue, which was subject only to the obligation to inform the patent owner. Id. at 875. Although the patentee retained a veto right on sublicensing the patent, a reversionary right in the event of bankruptcy and a right to receive infringement damages, the Federal Circuit ruled that none of those rights "was so substantial as to reduce the transfer to a mere license or indicate an intent not to transfer all substantial rights." Id. at 875.

In contrast, the Federal Circuit held in Abbott that a patent licensee did not have standing to sue for infringement where the licensor's retained rights included veto power over assignments, the right to make, use, and sell products covered by the patent for commercial purposes, the contingent right to prosecute infringement actions and, critically, limitations on the licensee's authority to settle. 47 F.3d at 1132. The Court compared the retained rights in that case to those in Vaupel, and

held that the licensor in <u>Abbott</u> "retained a significantly greater interest in the patents than [the licensor] retained in <u>Vaupel</u>." <u>Id.</u>

**B. Application**

The Court begins by reviewing the rights granted to AoB (now PerkinElmer) and retained by Yale under the License Agreement. That agreement granted PerkinElmer "a non-transferrable worldwide exclusive license" in and to the patents, which included 1) the right to sublicense to third-parties, 2) the "sole right" to bring suit for infringement and to defend the patents against claims of invalidity and 3) the rights to settle infringement claims as it sees fit and to enjoy all the benefits gained from litigation and settlement.

Among the rights Yale retained under the agreement are 1) the right to litigate the patents if AoB declines to do so, 2) the right to "participate through counsel" in any legal action initiated by AoB, 3) the right "to make, use and practice" the patented material for non-commercial purposes and 4) the right to "terminate" the license agreement if AoB fails to make required payments or becomes insolvent.

Looking first at significant rights identified in the <u>Alfred E. Mann Foundation</u> case, the License Agreement appears to convey most, if not all, substantial rights to PerkinElmer, who obtained all commercial use rights and the right to sublicense the patents

for commercial purposes, for the duration of the patents (or until PerkinElmer could no longer pay royalties). There is no indication that Yale retained a right to supervise any of PerkinElmer's activities. The only limitations on PerkinElmer's rights that could interfere with its standing to bring suit are 1) Yale's right to bring suit against alleged infringers if PerkinElmer chooses not to and 2) the limitation on assignment of the License Agreement.

The first limitation is sufficiently distinct from the limitation on the right to sue in Abbott that it does not detract from the rights transferred to PerkinElmer. As with the licensee in Vaupel but unlike the licensee in Abbott, PerkinElmer was granted the "sole right" to initiate, manage, settle and enjoy the rewards of patent infringement litigation. Yale retained the limited right to participate through counsel but cannot supervise PerkinElmer's litigation efforts. Moreover, Yale's retained right to sue an infringer if PerkinElmer chooses not to, a right not implicated here because PerkinElmer elected to sue, can be circumvented by the granting of a royalty-free sublicense to the alleged infringer by PerkinElmer. See Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245, 1251 (Fed. Cir. 2000) (licensor's retained right to sue is "illusory" where licensee can negate by "granting the alleged infringer a royalty-free sublicense"). In Vaupel, the Federal Circuit found the licensee's similar exclusive and

unfettered rights to sue and sublicense "dispositive" of the standing issue. 944 F.2d at 875-76.

On the other hand, the License Agreement forbids PerkinElmer from assigning its rights under the patent, one of the factors weighed heavily by the Federal Circuit in Abbott. 47 F.3d at 1132-33; see also Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333 (Fed. Cir. 2001) ("[L]imits on a transferee's assignment rights weigh in favor of finding that an agreement constitutes a transfer of fewer than all substantial rights in a patent.").

The Federal Circuit has yet to decide whether an exclusive licensee with the unfettered rights to sue and sublicense but lacking the right of assignment has "all substantial rights" in the transferred patents.  While it has ruled that an assignment right limited by a consent requirement does not override an exclusive licensee's unfettered right to sue, Unique Coupons, Inc. v. Northfield Corp., 12 F. App'x 928, 934 (Fed. Cir. 2001) (unpublished), that limitation is relatively minor compared to the prohibition of assignment in this case.

While a close call, the Court finds the License Agreement here analogous to the one at issue in Vaupel, i.e. that PerkinElmer has acquired "all substantial rights" under the patent.  The assignment limitation is circumscribed by PerkinElmer's ability to sublicense its rights and monetize its

ownership interests in the patents.  That fact, coupled with the broad language of the License Agreement which grants PerkinElmer otherwise unfettered rights to use the Patents and to sue and settle claims without Yale's supervision demonstrates that Agilent and other possible defendants need only respond to actions brought by PerkinElmer.  Accordingly, PerkinElmer has standing to pursue this claim and Agilent's motion to dismiss on that ground will be denied.

**IV.  Motion to Amend the Complaint**

Plaintiff seeks leave of the Court to amend its complaint pursuant to Fed. R. Civ. P. 15(a)(2), whereby a court "should freely give leave when justice so requires."  District courts enjoy "significant latitude in deciding whether to grant leave to amend."  U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009).  Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party and futility of amendment.  Id.  Amendment is futile when the amended complaint would still fail to survive a motion to dismiss.  See Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

Defendant opposes plaintiff's proposed amendment solely on the grounds that plaintiff lacks standing to sue for any claim. Resolution of the preceding issue renders that argument moot.

Further, PerkinElmer's motion to amend was filed prior to the expiration of the November 15, 2012 deadline for amending the pleadings set by the Court and is, therefore, timely filed. Accordingly, that motion will be allowed.

### ORDER

In accordance with the foregoing, defendant's motion to dismiss (Docket No. 6) is **DENIED** and plaintiff's motion to amend the Complaint (Docket No. 33) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 8, 2013